# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

IN RE: THE ADOPTION OF )
FEMALE CHILD, E.N.R. )
)
AMY JENELL REED and )
JONATHAN LAMAR REED )
)
    Petitioners/Appellees, )        Appeal No.
)        01A01-9806-CH-00316
v. )
)        Lawrence Chancery
TIMOTHY RAY ROSE )        No. 8663-97
)
    Respondent/Appellant. )

APPEAL FROM THE CHANCERY COURT
FOR LAWRENCE COUNTY

THE HONORABLE ROBERT L. JONES PRESIDING

ANDREA HUDDLESTON
HILLHOUSE & HUDDLESTON
P.O. BOX 787
LAWRENCEBURG, TENNESSEE 38464

ATTORNEY FOR PETITIONERS/APPELLEES

J. JAY CHEATWOOD
P.O. BOX 794
LAWRENCEBURG, TENNESSEE 38464

ATTORNEY FOR RESPONDENT/APPELLANT

**AFFIRMED AND REMANDED**

                    PATRICIA J. COTTRELL, JUDGE

CONCURS:
CANTRELL, P. J.

DISSENTS IN SEPARATE OPINION:
KOCH, J.

# OPINION

Appellant Timothy Ray Rose, an inmate of the Tennessee Department of Correction, seeks reversal of the trial court's decision to terminate his parental rights regarding E.N.R., his daughter by Amy Jenell Reed. Mr. Rose asserts that Tenn. Code Ann. § 36-1-113 (g) (6) (Supp. 1998) violates the Due Process Clause of the Fourteenth Amendment. He also maintains that termination of his parental rights was not in E.N.R.'s best interest. For the following reasons, we affirm and remand.

E.N.R.'s parents began dating in January of 1993. She was born on December 21, 1993. Her parents never married. Mr. Rose attended the birth, and, in the ensuing weeks, visited the new-born and her mother frequently. Although he did not pay for pre-natal care, he gave Mrs. Reed $500 or $600 of his income tax refund after the birth.

When E.N.R. was seven weeks old, Mr. Rose pleaded guilty to a lesser included offense of rape and was incarcerated on February 8, 1994, under a twelve-year sentence. He was originally charged with aggravated rape of a five-year-old child. Mrs. Reed testified that she did not learn about the charges until May of 1993, after she got pregnant. She stated that Mr. Rose claimed to be innocent and she believed him. Mr. Rose maintained that he told Mrs. Reed of the charges shortly after they began dating.

For the first year after Mr. Rose was incarcerated, Mrs. Reed regularly took E.N.R. to visit her father at the penitentiary. Mrs. Reed's interest in maintaining the relationship waned after she learned that Mr. Rose had confessed to the crime with which he was originally charged. During his incarceration, Mr. Rose sent E.N.R. $177.09 in child support. Mrs. Reed returned most of this

money at Mr. Rose's request, for his use while incarcerated. Mrs. Reed last visited the prison in October 1996.

The Reeds married in the summer of 1997. On August 28, 1997, they filed the underlying petition. On the same day, Mr. Rose filed a petition to legitimate E.N.R. The Reeds successfully moved to consolidate Mr. Rose's legitimation petition with this action. On November 18, 1997, the Reeds moved for summary judgment. Mr. Rose filed a *pro se* response, a motion seeking appointed counsel and a motion requesting an order to allow his personal appearance at all hearings. The trial court granted Mr. Rose's motions, appointed counsel, and issued an order legitimating E.N.R. *See* Tenn. Code Ann. § 36-1-117 (b)(2) and (3) (Supp. 1998). After a hearing, the court denied the Reeds' motion for summary judgment.

The case came on for trial and, after hearing the evidence, the trial court terminated Mr. Rose's parental rights and granted the Reeds' petition for adoption of E.N.R. by Mr. Reed.[1] The trial court found that Mr. Rose pleaded guilty to rape and received a 12-year sentence when E.N.R. was under eight (8) years of age, and, therefore, the Reeds had met their burden of proving, by clear and convincing evidence, the existence of statutory grounds for termination on the basis of Tenn. Code Ann. § 36-1-113 (g) (6). The court further concluded that the Reeds had proved that termination of Mr. Rose's parental rights and E.N.R's adoption by Mr. Reed were in the best interest of the child. The trial court also upheld the constitutionality of Tenn. Code Ann. § 36-1-113 (g) (6), relying on *Worley v. State Department of Children's Services*, No. 03A01-9708-JV-00366, 1998 WL 52098 (Tenn. App. Feb. 10, 1998) (no Tenn. R. App. P. 11

---

[1]On appeal, Mr. Rose has raised no issue regarding the court's decision to grant the adoption of E.N.R. by Mr. Reed.

-4-

application filed).

I.

To terminate a parent's rights to his or her child, the trial court first must find that one of the statutory grounds for termination has been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1) (Supp. 1998). Once this finding is made, the court must determine whether it has also been shown by clear and convincing evidence[2] that termination of the parent's rights is in the child's best interests. Tenn. Code Ann. § 36-1-113(c)(2) (Supp. 1998).

The grounds for the termination of Mr. Rose's parental rights were those found in Tenn. Code Ann. § 36-1-113(g)(6) (Supp. 1998). That subsection states in pertinent part:

> Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:  .  .  .
>
> (6)   The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

On appeal, Mr. Rose does not dispute the trial court's finding that the requirements set out in section 113(g)(6) were proved. He does, however, argue that termination of his parental rights is not in the best interest of E.N.R.   He maintains that E.N.R. should not be deprived of his support and affection.

---

[2]    The wording of the statute indicates the legislature's intent that the evidentiary requirements of both prongs of Tenn. Code Ann. § 36-1-113 (c)  must be satisfied by clear and convincing evidence. *See also State Department of Children Services v. Malone*, No. 03A01-9706-JV-00224, 1998 WL 46461 at * 2 (Tenn. App. February 5, 1998) (Tenn. R. App. P. 11 application denied, June 8, 1998) (applying the clear and convincing standard to the best interest test); *State Department of Children Services v. Darr*, No. 03A01-9706-JV-00213, 1998 WL 128874 at * 4 (Tenn App. March 24, 1998) (no Tenn. R. App. P. 11 application filed) (same).

As stated in the statute, an action to terminate parental rights can be initiated only if one of the statutorily-defined grounds is shown to exist. Our legislature has chosen to define those grounds by using objective criteria, leaving little room for consideration of other factors, such as intent or wilfulness in determining whether the grounds exist. *See Adoption of Dunaway*, 1999 WL552873 (Tenn. App. July 29, 1999).

However, the finding that grounds for termination exist only triggers the second analysis - whether termination of <u>this</u> parent's parental rights is in <u>this</u> child's best interest. It is in this critical phase of the analysis that the court can and should consider the particular circumstances before it, including the impact on the child of the termination of a previously established and maintained relationship, where such has existed, or the impact on a young child of the absence of a parent for a foreseeably large portion of that child's early years. It is in the best interest analysis phase of the termination determination that the court must engage in individualized consideration of the situation before it and make that often-difficult decision as to the child's best interest.

In making this best-interest determination, the trial court is required to consider, but is not limited to, the following factors:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been

established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward other children in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 1998). Our review of the trial court's decision is *de novo* upon the record with a presumption of correctness of the trial court's findings of fact, unless a preponderance of the evidence dictates otherwise. *See* Tenn. R. App. P. 13(d). The trial court herein, however, applied the generally applicable preponderance of the evidence standard to the best interest analysis. Our task, then, is to determine whether the record shows by clear and convincing evidence that termination of Mr. Rose's parental rights is in E.N.R.'s best interest.

The record shows that Mr. Rose was charged with the aggravated rape of a five year old child, the daughter of his cousin's girlfriend. He confessed and entered a plea to the lesser included offense of rape. Mr. Rose was denied parole in 1996 based on the seriousness of the offense. He has obtained no psychiatric

treatment during his incarceration. E.N.R. was conceived while the charges were pending against Mr. Rose, raising questions regarding Mr. Rose's forethought as to and interest in maintaining a presence in E.N.R.'s life. Further, prior to the court granting his petition to legitimate E.N.R. and setting of child support, Mr. Rose provided minimal child support, and actually requested the return of funds he sent to Mrs. Reed. He sent no birthday or Christmas gifts or greetings. Mr. Rose's family has not maintained ties with E.N.R. through visits, telephone calls, support, or any communication.

E.N.R. has been living with her mother and her stepfather, Mr. Reed, since their marriage in May of 1997. Mr. Reed has cared for and supported E.N.R. They have developed a close relationship, and he considers her his daughter. He reads to her, plays with her, and the family enjoys many activities together. E.N.R. calls Mr. Reed "daddy", and he introduces her as his daughter. E.N.R. has also developed a familial relationship with Mr. Reed's mother. Mr. Reed testified that he would obviously continue to love E.N.R. and take care of her if he were not allowed to adopt her. However, he wanted to adopt her so that she could share a last name with him, her mother, and her new sibling.[3] He also testified that he understood the obligations for future support he would undertake if the adoption were granted.

E.N.R. was seven weeks old when Mr. Rose was incarcerated. Her mother and Mr. Rose had never established a home together. During the next two years, E.N.R. was brought by her mother to visit Mr. Rose in prison approximately twenty-five times. At the time of the hearing, E.N.R. was almost four and one-half years old and had had no contact with Mr. Rose or his family

---

[3] Mrs. Reed was pregnant at the time of the hearing.

for approximately two years. She has formed close relationships with her stepfather and his family. She has been living in a stable home environment with a nurturing family unit and has prospered. The trial court found, "this child for the last two or three years has really not had a father figure other than Jonathan Reed." We find, by clear and convincing evidence, that four-year-old E.N.R.'s best interests lie in maintaining a nurturing, stable environment where she feels secure and feels she is part of a family group.

## II.

Although he agrees that the statutory grounds set out in Tenn. Code Ann. § 36-1-113 (g) (6) were proved, Mr. Rose asserts that that provision unconstitutionally deprives him of his fundamental liberty interest in his parental relationship without due process of law. According to Mr. Rose, the statute's fatal flaw is its failure to consider all relevant circumstances, including parole possibilities or an early release date from prison.

Before appellate review of an attack on the constitutionality of a statute is appropriate, the record must reflect compliance with Tenn. R. Civ. P. 24.04, Tenn. R. App. P. 32, and Tenn. Code Ann. § 29-14-107 (b).

Rule 24.04 of the Tennessee Rules of Civil Procedure states in pertinent part:

> When the validity of a statute of this state . . . is drawn in question in any action to which the State or an officer or agency is not a party, the court shall require that notice be given the Attorney General, specifying the pertinent statute...

In proceedings in which a statute of statewide effect is alleged to be unconstitutional, Tenn. Code Ann. § 29-14-107 (b) mandates that "the attorney general of the state shall also be served with a copy of the proceeding and be

entitled to be heard." Tenn. Code Ann. § 29-14-107 (b).

Nothing in the trial court record demonstrates that the Attorney General received the requisite notice of this action challenging the constitutionality of Tenn. Code Ann. § 36-1-113 (g) (6). Such notice is mandatory. *See Cummings v. Shipp,* 156 Tenn. 595, 597, 3 S.W.2d 1062, 1063 (Tenn. 1928); *Harless v. City of Kingsport,* No. 03A01-9707-CH-00289, 1998 WL 131519 at * 7 (Tenn. App. March 25, 1998) (no Tenn. R. App. P. application filed). Thus, the constitutional issue is not properly before us.

In addition, the Rules of Appellate Procedure also require such notice. Rule 32 states:

> (a) Service; When Required. - When the validity of a statute of this state or an administrative rule or regulation of this state is drawn in question in any appeal to which the state or an officer or agency is not a party, the party raising such question shall serve a copy of the party's brief on the Attorney General.
>
> (b) Proof of Service. Proof that service has been made on the Attorney General shall be filed with the brief of the party raising such question.
>
> (c) Right to Respond. The Attorney General is entitled, within the time allowed for the filing of a responsive brief by a party, to file a brief. The Attorney General is also entitled to be heard orally, regardless of whether he or she files a brief.
>
> (d) Consequence of Failure to Comply. Except by order of the court, in the absence of notice, the appellate court will not dispose of an appeal until notice has been given and the Attorney General has been given such opportunity to respond as shall be set by the court.

Subsection (d) of this rule would allow this Court to direct that notice and the opportunity to respond be provided to the Attorney General and to suspend disposition of an appeal pending such response where the requisite

notice has been provided in the trial court's proceedings but not on appeal[4]. However, we do not interpret the rule to allow us to order the notice and hear the appeal where notice was not provided in the trial court which considered the constitutional challenge.

The failure to provide notice to the Attorney General precludes our review of the constitutional issue raised by Mr. Rose. When this court has faced a situation where the Attorney General was not properly given notice in the trial court, we have interpreted our authority as including the discretion either to remand the case or to decide the other issues and refuse to consider the constitutional issue. *See Wallace v. Knoxville's Community Development Corp.*, 568 S.W.2d 107 at 110 (Tenn. App. 1978)("in the exercise of our discretion, we have entered an order declining to remand the cause for the purpose of notifying the Attorney General.") Tenn. R. App. P. 36 gives this court authority to "grant any relief" on the law and the facts, and the Advisory Committee's Comments state that the rule "makes clear that the appellate courts are empowered to grant whatever relief an appellate proceeding requires." We find no language in Tenn. Code Ann. § 29-14-107(b) Tenn. R. Civ. P. 24.04 which limits this court's discretion to grant appropriate relief. Similarly, we find no such language in any opinions of the Supreme Court or any language indicating that our interpretation as to the scope of our discretion has been incorrect.

---

[4] The appellate clerk's file includes a letter from an Assistant Attorney General asking to be removed from the notice list in this case because "the state has no interest" in it. It is not clear how the Assistant Attorney General came to be listed to receive notices regarding this case, and the appellate record contains no indication that the Attorney General was provided notice that Mr. Rose was challenging the constitutionality of a statute. The letter supports that conclusion since indicating "no interest" is not one of the options available to the Attorney General upon receipt of notice of a challenge to the validity of a statute. *See* Tenn. Code Ann.§8-6-109(b)(9).

-11-

In the few cases[5] where the Supreme Court has faced a situation where a constitutional challenge to a statute was raised and the Attorney General had not been properly notified at the trial level, the lawsuits were brought under the Declaratory Judgment Act[6] and the only issue in the case was the constitutionality question.[7] In those cases, the Supreme Court had no option to disregard the procedurally defective constitutionality issue and decide the case on the remaining grounds.

In a number of cases, this court's analysis of the relief appropriate where no notice has been given to the Attorney General has been based on two general principles: (1) the burden of providing the required notice lies with the party bringing the constitutional challenge, and (2) that party's failure to provide notice constitutes a failure to properly proceed below which can prelude that party from the relief sought in this court, i.e., a holding that the statute is

[5] The scarcity of cases involving this situation is not surprising because the intermediate appellate courts would have addressed the lack of notice to the Attorney General except in those cases wherein the intermediate court is bypassed pursuant to Tenn. Code Ann. §16-3-201(d).

[6] The Supreme Court has determined that in a action brought under the Declaratory Judgment Act challenging the constitutionality of a statute, the Attorney General must be made a party. *See Cummings v. Beeler*, 189 Tenn. 151, 223 S.W.2d 913 (1949). *See also Paty v. McDaniel*, 547 S.W.2d 897, 901, wherein the Court stated that the case had earlier been "remanded to cure the deficiency of failure to make the Attorney General a party."

[7] In *Cummings v. Shipp*, the Court held that service on the Attorney General, under the Declaratory Judgment Act, was mandatory. This lawsuit had only one issue: the constitutionality of a statute of statewide application. The Court found that it was without jurisdiction because the parties did not have adverse interests, and since the Attorney General was not made a party, no adverse interests were represented. In *Paty v. McDaniel*, the only issue before the Supreme Court was whether a provision of Tennessee's Constitution violated individual rights guaranteed under the U. S. Constitution. The Plaintiff brought suit to have an opposing candidate for office declared ineligible under the Tennessee Constitution. In *Buena Vista Special School Dist. v. Board of Election Com'rs of Carroll County*, 173 Tenn. 198, 116 S.W.2d 1008, (1938), the lower court had enjoined the holding of an election on the ground that the statute authorizing the election was unconstitutional. The Supreme Court, while finding that the chancellor was correct in his conclusion that the statute was unconstitutional, reversed the granting of the injunction. The Court then held that the lawsuit should proceed under the Declaratory Judgment Act, that relief under that act seemed proper, and that the Attorney General should be made a party to the declaratory judgment action.

unconstitutional.[8] *See Laue v. Richardson*, (Appeal No. not given) 1987 WL 9374 at *3 (Tenn. App. April 14, 1987) ("plaintiff [the party asserting the unconsitutionality of a statute] failed to comply with the notice requirement of Rule 24.04, T.R.C.P.".);*Harless v. City of Kingsport*[9], No. 03A01-9707-CH-00289, 1998 WL 131519 at * 7 (Tenn. App. March 25, 1998) (no Tenn. R. App. P. application filed) (finding that the party bringing the constitutionality challenge "failed to comply with T. C. A. § 29-14-107(b), which requires that a party who seeks to challenge the constitutionality of a statute of statewide effect must give notice to the State Atttorney-General", and also failed to comply with similar notice requirements in Tenn. R. Civ. P. 24.04 and Tenn. R. App. P. 32, and in such absence of compliance, the constitutionality issue "is not properly before us."). In *Wallace v. Knoxville's Community Development Corp.*, 568 S.W.2d 107 at 110, this court found that the appellants, who were challenging the constitutionality of a statute, "did not properly proceed below" by failing to give notice to the Attorney General. *See also Neill v. Neill*, (no Tenn. R. App. P. 11 application filed) Appeal No. 02A01 - 9109-GS-00201, 1992 WL 41697 at *6 (Tenn. App. March 6, 1992) ("Since appellant [the party challenging the constitutionality of the statute] did not properly proceed below, we will not consider this issue.") Similarly, in *McDaniel v. General Care Corp.*, 627

---

[8] In only one case has the procedural defect been attributed to the trial court, and in that case the trial court, *sua sponte*, determined a statute to be unconstitutional, even though the issue had not been raised by the parties. No notice had been provided to the Attorney General. *See Haynes v. City of Pigeon Forge*, 883 S.W.2d 619 (Tenn. App. 1994). This court found the trial court's ruling "procedurally defective", but pretermitted the constitutional issue and decided the case on other grounds which did not require consideration of the constitutional issue. *Id* at 619.

[9] In *Harless*, the plaintiff-appellant challenged city ordinances. However, this court found that the claim also constituted a challenge to statutes of statewide applicability since the ordinances essentially tracked the language of the corresponding statutes. Therefore, the court found the notice provisions of Tenn. Code Ann. § 29-14-107(b) and Tenn. R. Civ. P. 24.04 applied.

S.W.2d 129 (Tenn. App. 1981), this court found that the party seeking to challenge a statute was "not at liberty to raise the constitutional question at this stage of the proceeding." *Id.* at 133.[10]

In *Wallace,* in explaining its decision not to remand, the court explained that the appellants were not in a position to assert the unconstitutionality of the statute on appeal. The court indicated that it would more than likely have remanded the case if the trial court had found the statute unconstitutional. This reasoning is implicitly based on the court's often-applied analysis that the challenging party had the burden of providing the required notice and, therefore, was not entitled to relief on appeal because of its responsibility for the error below.[11]

We are of the opinion that, as stated in *Wallace*, the question of whether to remand a case to the trial court for reconsideration of the constitutional issue after notice to the Attorney General is a matter within our discretion. In view of this court's recent ruling on the constitutionality of the same statutory provision, and in the interest of providing stability to the child involved in these proceedings, we decline to remand.

Therefore, for the reasons stated above, we affirm the order of the trial

---

[10] Although the court found that the issue of the constitutionality of the statute was not raised in the trial court, it specifically relied on Tenn. R. Civ. P. 24.04 in denying consideration of the question of the validity of the statute.

[11] Tenn. R. App. P. 36(a) provides that appellate courts are not required to grant relief to a party responsible for an error or who failed to prevent or nullify the harmful effect of an error. The Advisory Committee Comments indicate this provision is a statement of the previously accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error.

court in terminating the parental rights of Mr. Rose. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

CONCURS:


_____
BEN H. CANTRELL, P. J., M.S.


DISSENTS IN SEPARATE OPINION:

WILLIAM C. KOCH, JR., JUDGE